UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


BONITA MEDIA ENTERPRISES, LLC,

                Plaintiff,

vs.                        Case No.  2:07-cv-411-FtM-29DNF


COLLIER COUNTY CODE ENFORCEMENT
BOARD, COLLIER COUNTY, a political
subdivision of the State of Florida,
COLLIER COUNTY BOARD OF COUNTY
COMMISSIONERS,

                Defendants.

_____


### OPINION AND ORDER

      This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction  (Doc. #12), filed on September 24, 2007. Defendants filed a Memorandum of Law in Opposition (Doc. #28) to the motion on October 26, 2007.  The Court heard oral arguments on January 8, 2008.  With the Court's permission, plaintiff filed Plaintiff's Supplemental Brief on Standing (Doc. #44) on January 11, 2008.

### I.

      Plaintiff Bonita Media Enterprises, LLC (plaintiff or Bonita Media) owns and operates a mobile sign business which sells advertising on specially manufactured vehicles driven on the streets and highways of Collier County and other counties in

Southwest Florida.  The vehicles are essentially large vans with billboards on both sides and the rear; the billboards consist of triangular vertical panels which rotate every eight seconds, thus displaying a different image.  Plaintiff asserts that the advertising has included both noncommercial and commercial speech, and it intends both types of speech in the future.

In a December 18, 2006, Collier County Code Enforcement Notice of Violation, plaintiff was informed that on December 14, 2006, Investigator Kitchell T. Snow observed its "vehicle with moving sign copy that changed approximately every 30 to 40 seconds advertising business, creating a traffic hazard through the attraction and/or distraction to the motorized public.  This is contrary to the Collier County Land Development Code and must be brought into compliance with current code." (Doc. #8-2, Exh. A.) The Notice of Violation advised plaintiff that it must, on or before December 21, 2006, "cease displaying any sign that employs movement or motion or that gives the illusion of motion, whether said vehicle is in operation or stationary within the unincorporated area of Collier County.  Cease all future use of signs that do not comply with the Collier County Land Development Code." (Id.)

Plaintiff failed to comply, and the Notice of Violation was scheduled to be heard by the Collier County Code Enforcement Board (CEB).  Plaintiff's attorney filed a Memorandum of Response for the CEB's consideration, raising First Amendment issues, among others.

A hearing before the CEB was held on May 24, 2007, at which plaintiff and its attorney participated.

In a June 4, 2007 written Findings of Facts, Conclusions of Law and Order of the Board (Doc. #8-4, Exh. C), the CEB found plaintiff to be in violation of Sections 5.06(U), 5.06.06(W), and 5.06.06(X), ordered plaintiff to immediately cease "displaying of any sign within Collier County that employs motion, or the illusion of motion, or any sign mounted on vehicle be it roof, bed, hood, truck and so on where the sign is made to attract or distract the attention of motorists for the purpose of advertising a business, product, service or the like, attract or distract the attention of motorists for the purpose of advertising a business, product, service or the like whether or not said vehicle is parked or driven or any sign which constitutes a traffic hazard or detriment to traffic safety by its size, color, movement, content, coloring, or method of illumination." (Doc. #8-4, Exh. C.) If plaintiff did not comply, the CEB's Order imposed a fine of $1,000 per sighting. Plaintiff was also ordered to pay all operational costs incurred in the CEB prosecution. Plaintiff is currently in compliance with the Sign Code, solely in order to avoid the imposition of fines.

On June 25, 2007, plaintiff filed its Complaint (Doc. #1) in the instant federal case. Plaintiff's operative pleading is a three-count Amended Complaint (Doc. #8) seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. Count I of the Amended Complaint (Doc. #8) seeks a declaration "that the Sign Code

-3-

is, on its face and as applied, unconstitutional" as a violation of the First Amendment.  Count II seeks a declaration "that the Sign Code is unconstitutional" as a violation of due process under the Fourteenth Amendment both on its face and as applied.  Count III seeks a preliminary injunction barring defendants from enforcing the Sign Code against plaintiff and a permanent injunction barring defendants from enforcing the Sign Code against "the world," and enjoining defendants' enforcement or collection of any fines imposed on plaintiff.

## II.

Plaintiff seeks a preliminary injunction "enjoining the County, its agents and assigns, during the pendency of this action, from enforcing the Sign Code against [Bonita Media], including the imposition of any fines against [Bonita Media], and from taking any steps to enforce the June Order, including any liens the County may seek to impose against [Bonita Media] or its personal property." (Doc. #12, p. 22.)  At oral argument the County stipulated that it would not assert any liens against Bonita Media or its personal property during the pendency of this action.  Also at oral argument, plaintiff clarified that by seeking an injunction precluding the County from "taking any steps to enforce the June Order" it did not intend to restrict the County's participation in its state court appeal of the CEB decision.  What remains at issue, therefore, is plaintiff's request to enjoin enforcement of the Sign

Code in its entirety, including imposition of fines, against Bonita Media.

In the Eleventh Circuit, issuance of "a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion" on each of four prerequisites. Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974)[1]. See also McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). The four prerequisites for a preliminary injunction are: (1) a substantial likelihood of succeeding on the merits; (2) a substantial threat of irreparable injury if relief is denied; (3) an injury that outweighs the opponent's potential injury if relief is granted; and (4) the injunction would not harm or do a disservice to the public interest. SunTrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1166 (11th Cir. 2001)(citing American Red Cross v. Palm Beach Blood Bank, 143 F.3d 1407, 1410 (11th Cir. 1998)); Gold Coast Publ'ns, Inc. v. Corrigan, 42 F.3d 1336, 1343 (11th Cir. 1994), cert. denied, 516 U.S. 931 (1995). The burden of persuasion for each of the four requirements is upon the movant. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)(en banc). These four requirements apply in First Amendment cases challenging a sign ordinance. KH Outdoor, LLC v. Trussville, 458 F.3d 1261, 1269 (11th Cir. 2006);

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

<u>Solantic, LLC v. City of Neptune Beach</u>, 410 F.3d 1250, 1253 n.3 (11th Cir. 2005).

### III.

While conceding that plaintiff has standing to challenge Sections 5.06(U), 5.06.06(W), and 5.06.06(X) of the Sign Code, defendants assert that plaintiff has no standing to make a First Amendment challenge to the remainder of the Sign Code. Plaintiff insists that it has standing to challenge the constitutionality of the Sign Code in its entirety. The Court concludes that neither side is correct.

### A.

A plaintiff must have standing in order to satisfy the case or controversy requirement of Article III of the United States Constitution. <u>KH Outdoor, L.L.C. v. Clay County</u>, 482 F.3d 1299, 1303 (11th Cir. 2007). The standing principles are well-settled in the Eleventh Circuit:

> [T]he irreducible constitutional minimum of standing contains three elements, [ ] all of which must be satisfied: First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Trussville</u>, 458 F.3d at 1266-67 (citations omitted)(alterations in original).  "In addition to the constitutional requirements, there are also prudential standing principles, one of which requires that 'a party generally may assert only his or her own rights and cannot raise the claims of third parties not before the court.'" <u>Trussville</u>, 458 F.3d at 1266-67 (quoting <u>Granite State Outdoor</u> <u>Adver., Inc. v. City of Clearwater</u>, 351 F.3d 1112, 1116 (11th Cir. 2003)).  Further,

> First Amendment standing analysis may be complicated further by the overbreadth doctrine, which serves as an exception to the prudential principle noted above. Under overbreadth, a party may bring a First Amendment case asserting the rights of third parties if a statute is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court. [ ] Significantly, the overbreadth doctrine does not relieve a plaintiff from having to establish constitutional standing; it is simply an exception to one of the prudential requirements. [ ] Indeed, a plaintiff may bring an overbreadth challenge to only those provisions of a law or ordinance that "affect its activities." [ ]  In other words, the overbreadth doctrine does not change the statutes or provisions of an ordinance a plaintiff may challenge; she can only contest those which actually caused her injury. Rather, the overbreadth doctrine simply allows a plaintiff to bring a facial challenge to a provision of law that caused her injury, regardless of whether the provision's regulation of her conduct in particular was constitutional.

<u>Trussville</u>, 458 F.3d at 1266-67 (internal citations omitted).  If plaintiff establishes that it has standing to challenge a specific portion of the Sign Code, "the overbreadth doctrine allows that challenge to that specific provision based on its impact on third parties." <u>Id.</u> at 1267.  Such a plaintiff can mount not only an as-applied challenge to the provision, but also a facial challenge to

the provision.   Id. at 1267-68.   See also Camp Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269-71 (11th Cir. 2006); Tanner Adver. Group v. Fayette County, 451 F.3d 777, 791 (11th Cir. 2006)(en banc).   Nonetheless, plaintiff can only challenge those provisions that "affect its activities."  Camp, 451 F.3d at 1273.

B.

The Collier County Sign Code was enacted because "[i]ncreased numbers and sizes of signs, as well as certain types of lighting distract the attention of motorists and pedestrians, and interfere with traffic safety."  § 5.06.01[2].  Additionally, Collier County found that "[t]he indiscriminate erection of signs degrades the aesthetic attractiveness of the natural and manmade attributes of the community and thereby undermines the economic value of tourism, visitation and permanent economic growth."  § 5.06.01.  The intent and purpose of the Sign Code was to implement the County's growth management plan; to promote health, safety, convenience, aesthetics and general welfare of the community by controlling signs which are intended to communicate to the public; and to authorize the use of signs which satisfy five identified criteria. § 5.06.01(A).

To accomplish these goals, the Sign Code first identifies signs which are permitted. § 5.06.02.  This section of the Sign Code addresses signs within residential zoned districts and residential designated portions of PUD zoned projects.  It sets

---

[2]All references are to the Sign Code attached to the Amended Complaint, Doc. #8, Exhibit B.

forth general restrictions on all such signs concerning maximum allowable height and minimum setback, § 5.06.02(A)(1)(a) and (b), and then imposes restrictions on real estate signs, model home signs, construction signs, residential directional or identification signs, on-premises signs within residential districts, and conditional uses within residential and agricultural districts.  § 5.06.02(A)(2)-(7).  The section then imposes requirements concerning signs within non-residential districts.  § 5.06.02(B).

The Sign Code then addresses Development Standards for Signs, § 5.06.03, which includes size limitation and structure, the use of spot or floodlights, and signs with address numbers.

The Sign Code then addresses Sign Standards for Specific Situations. § 5.06.04.  Restrictions are placed on real estate signs, construction signs, and on-premise signs.  The on-premise sign are restricted as to pole or ground signs; outparcels; directory signs; wall, mansard, canopy or awning signs; menu boards; projecting signs; under-canopy signs; signage for automobile service stations; signs within planned unit developments; flags; Conservation Collier signs; temporary signs; special purpose signs (on-site); commercial, business park and industrial directional or identification signs; on-premise signs within agricultural districts; off-premises directional signs; and illuminated signs. § 5.06.04(C)(1)-(17).

The next section of the Sign Code identifies 23 types of signs which are exempt from the otherwise applicable restriction. § 5.06.05(A)-(W). The exempted signs are allowed in all districts, subject only to the limitations set forth in the exemption.

The Sign Code then identifies prohibited signs. It is declared unlawful to erect or maintain any sign not expressly authorized by or exempted from the Sign Code. § 5.06.06. Thirty-seven (37) types of signs are expressly prohibited. Bonita Media was found to be in violation of three provisions: (1) § 5.06.06(U)("Any sign which employs motion, has visible moving parts, or gives the illusion of motion (excluding time and temperature signs)"); (2) § 5.06.06(W)("Any sign which constitutes a traffic hazard, or detriment to traffic safety by reason of its size, location, movement, content, coloring, or method of illumination, or by obstructing or distracting the vision of drivers or pedestrians"); and (3) § 5.06.06(X)("Signs mounted on a vehicle, be it the roof, hood, truck, bed, and so on, where said sign is intended to attract or may distract the attention of motorists for the purpose of advertising a business, product, service, or the like, whether or not said vehicle is parked, or driven, excluding emergency vehicles, taxi cabs, and delivery vehicles, where a roof mounted sign does not exceed two square feet. This section shall not apply to magnetic type signs affixed to or signs painted on a vehicle, provided said vehicle is used in the course of operation of a business, and which is not otherwise

prohibited by this Code.  It shall be considered unlawful to park a vehicle and/or trailer with signs painted, mounted or affixed, on site or sites other than that  at which the firm, product, or service advertized on such signs is offered.")

Finally, § 5.06.07 provides for enforcement of the Sign Code and provides penalties for violation of the Sign Code.

### C.

The Court concludes that the County's view of standing in this case is too restrictive and plaintiff's view is too expansive. While plaintiff certainly has standing to challenge those provisions of the Sign Code under which he was charged, standing is not limited to those provisions. Trussville, 458 F.3d at 1267. Rather, plaintiff has standing to challenge those portions of the Sign Code which "provide the basic definitional structure for the terms used in [the violated sections] and which more generally define the scope of signs allowed by [the violated sections]." Id. This includes provisions discussing the purpose and intent of the Sign Code and definitional sections. Id. The Court concludes that plaintiff has standing to challenge Sections 5.06.01, 5.06.05, 5.06.06, and 5.06.07 because these are the provisions of the Sign Code that "affect its activities."  This standing includes both facial challenges and as-applied challenges. Trussville, 458 F.3d at 1267; Camp, 451 F.3d at 1273-74.  The Court also concludes that plaintiff lacks standing to challenge Sections 5.06.02, 5.06.03 and

5.06.04 because plaintiff is not affected by these provisions, which have nothing to do with its activities.

### IV.

Most of the disputes between the parties relate to plaintiff's likelihood of establishing that the Sign Code is unconstitutional. Several steps are involved in this determination.

**A.  Content-Based or Content-Neutral:**

The Court first determines whether the ordinance is content-neutral or content-based.  Trussville, 458 F.3d at 1268; Solantic, 410 F.3d at 1258; Messer v. City of Douglasville, 975 F.2d 1505, 1509 (11th Cir. 1992).  This determination is important because it will decide the level of scrutiny the Court will utilize in reviewing the ordinance.  Generally, a content-neutral ordinance will be reviewed under an intermediate level of scrutiny[3], while a content-based ordinance will be reviewed under strict scrutiny[4].

"As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based."  Trussville, 458 F.3d at 1269 (quoting Turner Broad. Sys. v. FCC, 512 U.S. 622, 643 (1994)).  See

---

[3]Such an ordinance is constitutional if it does not restrict speech substantially more than necessary to further a legitimate government interest, and leaves open adequate alternative channels of communication.  Trussville, 458 F.3d at 1268-69.

[4]Such an ordinance is constitutional only if it constitutes the least restrictive means of advancing a compelling government interest.  Trussville, 458 F.3d at 1269.

also Dimmitt v. City of Clearwater, 985 F.2d 1565 (11th Cir. 1993).[5]  This approach focuses on the law's terms, rather than the justification for the law's existence.  Solantic, 410 F.3d at 1259 n.8.[6]  A content-neutral ordinance, on the other hand, is one that places no restrictions on either a particular viewpoint or any subject matter that may be discussed.  Trussville, 458 F.3d at 1269; Solantic, 410 F.3d at 1259; Messer, 975 F.2d at 1509.

The Court concludes that the portions of the Collier County Sign Code under review in this case are content-based.  Both exemptions and prohibitions in the Sign Code contain content-based provisions.

---

[5]Additionally, a sign ordinance has been found to be content-based where it favored commercial speech by allowing commercial messages to be displayed more prominently (greater size billboards) than those with noncommercial ideas, Cafe Erotica of Fla., Inc. v. St. Johns County, 360 F.3d 1274 (11th Cir. 2004), and where it favored commercial speech by allowing commercial billboards but no noncommercial billboards, Trussville, 458 F.3d at 1268.

[6]Solantic noted that the Supreme Court had stated in Ward v. Rock against Racism, 491 U.S. 781 (1989) that the government's purpose in enacting the ordinance was the controlling consideration in deciding whether the law was content neutral.  Solantic stated that the Supreme Court had receded from the Ward formulation in Cincinnati v. Discovery Network, 507 U.S. 410 (1993).  410 F.3d at 1259 n.8.  More recently, in discussing a First Amendment challenge to a noise ordinance, the Eleventh Circuit cited Ward and stated: "The government's purpose is the controlling consideration at this stage of the inquiry. [ ]  Government regulation of expressive activity is content-neutral so long as it is 'justified without reference to the content of the regulated speech.'"  DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1266 (11th Cir. 2007)(quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)).  The Court follows Solantic as the earlier binding precedent.  United States v. Hornaday, 392 F.3d 1306, 1316 (11th Cir. 2004), cert. denied, 545 U.S. 1134 (2005).

Section 5.06.05 identifies 23 types of signs which are exempt from the permit requirements and "shall be permitted" in all districts subject only to limitations related to that type of sign. Most of these exempted signs are content-based. Some signs are exempt if their content consists of names, addresses, profession, or speciality, while similarly located signs with other information would not be exempt. Thus, Subsection C exempts signs with the names and profession, speciality, or address for a professional office or business establishment, and Subsection N exempts signs with the name and address of a resident located at the entrance drive of residences of certain size lots. Subsection D exempts signs which are "[m]emorial plaques, cornerstones, historical tablets, and similar types of commemorative signs." A similar provision was found to be content-based in Solantic, 410 F.3d at 1265.

Some of the exemptions are literally and overtly content-based. Thus, Subsection E exempts signs which say "No Trespassing," "No Dumping," or are "other prohibitory or safety type signs." Subsection F exempts signs that say "For Sale" or "For Rent," or a "similar sign" for lots less than ten acres in size. Subsection H exempts open house signs. Subsection V exempts signs concerning a business's or establishment's operational status. See Linmark Assocs., Inc. v. Willingboro, 431 U.S. 85 (1977)(ban on "For Sale" signs is content-based violation of First Amendment).

-14-

Subsection I exempts bulletin boards and identification signs for "public, charitable, educational or religious institutions." Other organizations are not allowed such signs, a situation found to be content-based in Solantic, 410 F.3d at 1264.

Exemptions which favor certain speech based on the speaker, rather than the content of the message, are also considered content-based. Solantic, 410 F.3d at 1265-66. Thus, Subsection J is content-based because it exempts signs located on fences or walls surrounding athletic fields or within sports arenas, stadiums and the like, not signs on fences or walls by others. Subsection L is content-based because it exempts "window merchandise displays which are changed on a regular basis," but does not allow window merchandise displays by other users which do not change their displays. Subsection P exempts advertising and identifying signs on taxicabs, buses, trailers, trucks, or vehicle bumpers. Thus, those operating taxicabs, buses, trailers, and trucks may have signs anywhere on the vehicles, while other vehicles must limit their signs to the bumper. Subsection Q exempts religious displays "that do not constitute advertising," but does not exempt secular displays that do not constitute advertising.

Subsection O exempts flags or insignias of "governmental, religious, charitable, fraternal or other nonprofit organizations" displayed on property owned or leased by the organization. A similar provision was found to be content-based in Solantic, 410 F.3d at 1264.

Subsection S exempts copy changes for "shopping centers, theaters, billboards or marquees that have routine changes in copy, or are specifically designed for changes in copy." Copy changes for others is not exempt. Subsection T exempts a sign used as a construction sign by the general contractor of a development. Other signs, and even other construction signs, are not exempt. Subsection W exempts certain "internal directory signs" for institutional or governmental facilities, but similar signs for other types of facilities are not exempt.

In addition to content-based exemptions, the Sign Code contains some content-based prohibitions. Section 5.06.06 identifies 37 types of signs which are "expressly prohibited." Two provisions exempt signs which state the time and temperature, Subsections C and U, while two provisions exempt barber pole signs, Subsections C and E. Certain illuminated signs are prohibited, except "residential nameplates." Subsection F. Any signs which "resemble any official sign or marker erected by any governmental agency" are prohibited. Subsection M. Subsection Q prohibits signs depicting nudity, sexual conduct, or sexual excitement, which may regulate both protected and unprotected conduct. Solomon v. City of Gainsville, 763 F.2d 1212 (11th Cir. 1985). Subsection Y prohibits signs containing certain words, such as "Stop," "Look," "Danger," and any other words that interfere with, mislead, or confuse vehicular traffic. Subsection AA excepts "U-Pic signs" and political signs from being a principal use on property.

-16-

All three Sign Code sections involved in plaintiff's citation are content-based.  Section 5.06.06(U) prohibits signs employing motions, visible parts, or the illusion of motion, but excludes time and temperature signs.  This exclusion has been a component of sign ordinances found to be content-based.  <u>Solantic</u>, 410 F.3d at 1252; <u>Coral Springs St. Sys. v. City of Sunrise</u>, 371 F.3d 1320, 1347 (11th Cir. 2004)(time and temperature exemption "may be" unconstitutional).  Section 5.06.06(W) prohibits signs which constitute a traffic hazard or detriment to traffic safety by reason of, among other things, "content."  Section 5.06.06(X) contains double content-based provisions.  It first applies to signs mounted on a vehicle intended to attract attention "for the purpose of advertising a business, product, service, or the like," but not for other purposes.  The subsection then excludes certain prohibited signs based on the type of vehicle, including emergency vehicles, taxi cabs, and delivery vehicles.  Thus, under this subsection plaintiff's signs would not be prohibited if its business included performing taxi or delivery services.  Favoring some commercial speech over other commercial speech is a content-based provision.  <u>Solantic</u>, 410 F.3d at 1260.

**B.  Commercial or Non-Commercial Speech:**

Having determined that the relevant portions of the Sign Code are content-based, the Court must determine whether the restrictions involve commercial or noncommercial speech because the Supreme Court has afforded each different treatment under the First

Amendment.  See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 506 (1981) (plurality opinion).  Content-based restrictions on noncommercial protected speech are analyzed under the "strict scrutiny" test.  United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813 (2000); Boos v. Barry, 485 U.S. 312, 321-22 (1988). Under the strict scrutiny standard, such an ordinance is constitutional only if it constitutes the least restrictive means of advancing a compelling government interest.  Trussville, 458 F.3d at 1269.  On the other hand, even content-based restrictions on commercial speech are analyzed under the four-part test first announced in Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557 (1980).  Florida Bar v. Went For It, Inc., 515 U.S. 618, 623-24 (1995).  This requires the Court to determine whether (1) the speech is protected by the First Amendment, i.e., whether it is lawful and not misleading (2) the government interest is substantial, (3) the regulation directly advances the governmental interest asserted, and (4) the regulation is no more extensive than necessary to serve the governmental interest.  Thompson v. Western States Med. Ctr., 535 U.S. 357, 367 (2002).

Generally, commercial speech is "expression related solely to the economic interests of the speaker and its audience" or "speech proposing a commercial transaction."  Rubin v. Coors Brewing Co., 514 U.S. 476, 482, 493 (1995).  The Sign Code applies to both commercial and noncommercial speech, and plaintiff engages in both

types of speech.   In this situation, the Eleventh Circuit has applied the strict scrutiny test to evaluate the ordinance. Trussville, 458 F.3d at 1271; Solantic, 410 F.3d at 1252, 1267; Cafe Erotica, 360 F.3d at 1291-92; Southlakes Prop. Assocs. v. City of Morrow, 112 F.3d 1114, 1116-17 (11th Cir. 1997).

## C.  Constitutionality:

Under the strict scrutiny standard, a content based ordinance impacting noncommercial speech is constitutional only if it constitutes the least restrictive means of advancing a compelling government interest.  Trussville, 458 F.3d at 1269.  The County has the burden of proving the constitutionality of its conduct, and there is a presumption that a content-based ordinance is not constitutional.  Playboy, 529 U.S. at 816-17.

The Court finds that the portions of the Collier County Sign Code at issue here are not narrowly tailored to accomplish the County's asserted interests in aesthetics, traffic safety, and economic growth, and that such interests are not sufficiently compelling to justify the content-based restrictions.   While aesthetics, traffic safety, and economic growth are substantial government interests, they have not been found to be compelling governmental interests when used to justify content-based restrictions.  Solantic, 410 F.3d at 1267; Dimmitt, 985 F.2d at 1569-70.  The Sign Code's reliance on these factors is superficial at best, and are not tailored to accomplish the County's asserted

interests.  For example, it is at best unclear how allowing a taxicab or a delivery truck to have signs with moving parts contributes to safety and aesthetics but disallowing plaintiff's vehicles furthers such concerns.  Therefore, the Court concludes that plaintiff is substantially likely to prevail in its claim that the Collier County Sign Code provisions at issue in this case are unconstitutional.[7]

## V.

The remaining three elements necessary for a preliminary injunction have also been satisfied by plaintiff.

**A.   Substantial Threat of Irreparable Injury if Relief Denied:**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Trussville, 458 F.3d at 1272 (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)(plurality opinion)).  Despite this, a violation of the First Amendment does not automatically require a finding of irreparable injury entitling plaintiff to a preliminary injunction. Trussville, 458 F.3d at 1272.  In this case, the injury suffered by plaintiff constitutes a direct penalization, as opposed to incidental inhibition of First Amendment rights, and cannot be

---

[7]Plaintiff also asserts that the Sign Code is overbroad and vague.  In light of the Court's findings above that plaintiff is substantially likely to prevail on at least one ground, it is unnecessary to address the other constitutional challenges.

fully cured by the award of money damages.  According, plaintiff has satisfied this factor.

**B.   Injury Outweighs Potential Injury if Relief Granted:**

The injury to plaintiff outweighs whatever damage the preliminary injunction may cause the County.  As noted in Trussville, 458 F.3d at 1272, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury, and the city has no legitimate interest in enforcing an unconstitutional ordinance."  The County is not left without rules of traffic safety, since state statutes cover that area.  See, e.g., FLA. STAT. §§ 479.01, et seq., 316.077.  Plaintiff has satisfied this factor.

**C.   Lack of harm or Disservice to Public Interest:**

The public has no interest in enforcing an unconstitutional ordinance, and thus a preliminary injunction is not adverse to the public interest.  Trussville, 458 F.3d at 1272.  Thus, plaintiff has satisfied this factor.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion for Preliminary Injunction  (Doc. #12) is **GRANTED** as to Sections 5.06.01, 5.06.05, 5.06.06, and 5.06.07, and

is **DENIED** as to Sections 5.06.02, 5.06.03, and 5.06.04.   A preliminary injunction will enter by separate document.

      **DONE AND ORDERED** at Fort Myers, Florida, this __13th__ day of February, 2008.


JOHN E. STEELE
United States District Judge


Copies:
Counsel of record